The next case called for oral argument is Cooch v. Shelter Insurance Companies. The facts of this case are relatively straightforward, your honors. Mr. Cooch wasn't insured with Shelter General and his son, Zanus Anderson, was riding in an uninsured vehicle. That vehicle was involved in a motor vehicle accident and Mr. Anderson sustained injuries. When Mr. Cooch made a claim on the policy for uninsured motorist benefits, the claim was denied because of an exclusion of the policy. The exclusion was that there would not be uninsured motorist coverage where the insured was occupying a vehicle without the owner's permission or general consent. What happened was that the vehicle that was being operated, where Mr. Anderson had stolen at gunpoint, was a Chinese restaurant over in East St. Louis. A couple days later, Mr. Anderson was riding around in the vehicle with some of his friends and the driver of the vehicle crashed the vehicle in Washington Park and that's when Mr. Anderson was injured. So the claim was denied. Subsequently, Mr. Cooch validated declaratory judgment action seeking coverage, U.M. coverage. And so we engaged in discovery and another issue came up in discovery and that was the issue of whether Mr. Anderson was a resident of Mr. Cooch's home at the time of the accident because in order to have U.M. coverage, the insured has to be a resident relative of the named insured. His sister had said no, she lived with him over in, or he lived with her over in St. Louis and there was some other evidence so we took some discovery. Ultimately, we had a trial of the case and there was an order entered finding that Mr. Anderson was a resident of Mr. Cooch's residence at the time of the accident and the order also found that the shelter could not enforce the exclusion, the permissive use exclusion. Quoting from the order, the court finds that the application of the exclusion in shelter's policy of insurance unreasonably diminishes its statutory duty to provide uninsured motorist coverage to its insurers. The court therefore finds that the exclusion in shelter's policy of insurance relied upon by the defendant violates the public policy expressed in section 143A of the Illinois Insurance Code. At that point, and there was just so we're clear on this, there was no finding in the order of the amount of available coverage. There was a finding of coverage but not the amount of coverage that was available. So what happened was this triggered the step down clause in the shelter policy and the step down clause provides as follows. The fact of uninsured motorist insurance laws, underinsured motorist insurance laws, or financial responsibility laws. If an applicable uninsured motorist law, underinsured motorist law, or financial responsibility law renders any provision of this part of the policy unenforceable, we will provide only the minimum coverages mandated by such law. So, shelter took the position that since the trial court held that the exclusion was in violation of the insurance code, therefore that triggered the step down clause. The original uninsured policy limits were $5,100 but with the step down clause the policy would be $2,040. So I sent a check over to Mr. Kernan with $20,000 and that triggered a pleading by the plaintiff, a petition for additional relief that sought attorney's fees under section 155 as well as a finding of the full amount of the policy being available for coverage. So the trial court granted the plaintiff's petition, found that the full amount of the policy was available, and also awarded attorney's fees to the plaintiff under section 155 of the Illinois insurance code. So the issues here are two, your honors. The first issue is whether the trial court erred in refusing to enforce the step down clause and the second issue is whether the trial court erred in finding a violation of section 155 of the insurance code. First of all, the step down clause is not against public policy. A step down clause is enforceable. In fact, the Illinois Supreme Court upheld the step down clause in the case of State Farm versus Illinois Farmers. This was a case where the liability limits to the statutory minimum, if the vehicle is being operated by a permissive user who is not a family member or residing in the insurance household or a listed driver. So in other words, the policy might be 5100, but if it's a permissive user of the vehicle, the liability limits drop down to 2040. And State Farm argued to the Supreme Court, well that would be a violation of the insurance code, but the Supreme Court said that no, it's not a violation of the insurance code, that the step down clause was in fact enforceable because it stepped down to the statutory minimum. It did not preclude coverage, did not preclude liability coverage, it just dropped it down to 2040. And because the statutory minimum was 2040, the Supreme Court said that while the Illinois legislature believes that that's enough to minimally protect drivers on the road, therefore since the step down clause dropped the coverage down to that amount, that would not be a violation of public policy, therefore the step down clause was indeed enforceable in that case. And that's basically what happened here. The step down clause applies, so it's not precluding coverage, but it drops it down to the statutory minimum of 2040. Under the Supreme Court's reasoning in State Farm v. Illinois Farmers, it's not a violation of public policy, and the step down clause is in fact enforceable. I want to cite to the Court another case, Luchtfeld v. Allstate. This is another Illinois Supreme Court case. It involves uninsured motorist coverage. In this particular case, the insured was covered by two policies. The first policy was issued by Pekin. It provided 2040 in an uninsured motorist coverage. The second policy the insured had, and that was on the insured's motorcycle. The second policy that the insured had was an Allstate policy. It covered three of the insured's vehicles. That was a 100-300 UM coverage policy. So what happened was the insured had an accident when he was riding his motorcycle. His damages exceeded the uninsured limits of the Pekin policy, so Pekin paid its limits to the insured. At that point, Mr. Luchtfeld made a claim against his Allstate policy. His position was, well, my damages exceed the 2040 limits. I should be able to But Allstate denied the claim because there was an exclusion in the Allstate policy that said if there's coverage provided under another policy for UM that provided UM coverage, there would be no coverage at all in the Allstate policy. So in other words, since the insured happened to have insurance with another company that provided UM coverage, there would be no UM coverage at all under the Allstate policy. And so there was litigation, and Luchtfeld argued, well, you know, that was a violation of the insurance code. It's against public policy. He paid for the coverage, paid for this additional UM coverage under the Allstate policy. He should be able to access that coverage. But the Supreme Court again said, no, the exclusion was enforceable. It was enforceable because Mr. Luchtfeld received the statutory minimum, 2040, under the Pekin policy. So even though this insured paid for two separate insurance policies that provided uninsured motorist coverage, the Supreme Court said it's not a violation of the insurance code, and the Allstate policy was, the exclusion was enforceable because he received the minimum amount of coverage. And the reason why it was enforceable was, again, the public policy behind this. The Supreme Court said, we have repeatedly stated that the purpose of the uninsured motorist statute is to provide coverage which would compensate the insured at at least the same extent he would have been if he had been insured by a motorist who had purchased the minimum insurance required by law. So that's what the Supreme Court said. Public policy is, as long as the coverage is to the statutory minimum, it was not a violation of the insurance code for Allstate to assert that exclusion to preclude coverage to its insured. And again, the same result here. It's not a violation of the insurance code. The step down clause is enforceable because, again, Mr. Gooch would receive the statutory minimum. Again, he would receive the 2040. It's not like he's precluded from any coverage. He receives the statutory minimum. As a result, the insured, Zanus Anderson, would be placed in a position as if the adverse driver would have been minimally insured. The second issue is whether there's a bona fide coverage dispute here. And again, the trial court awarded attorneys fees under Section 155. But I believe there is a good faith dispute as to coverage. We cited two Illinois Supreme Court cases in this matter. One of them directly discussed the step down clause, finding it was enforceable. And the other one discussed Illinois public policy on how if the insured receives the minimum amount, if they make an uninsured motorist claim, it's not a violation of the court's support. We did have a good faith basis to dispute coverage. We did not make some frivolous argument here, unsupported by any case law at all. And also what happened was after the trial court found that there was coverage, that the insured was entitled to uninsured motorist coverage, we forwarded the amount of the undisputed coverage, which was $20,000. So this is not a situation where the insurance company did not pay anything. And even though there was coverage owed, it's not a situation where the insurance company refused to pay anything. We went ahead and sent a check for the undisputed amount, which is the $20,000. The amount in dispute was the $30,000, which is the difference between the original policy limits and the undisputed amount. So again, I believe there certainly was a bona fide dispute here. I do not believe there was a Section 155 violation. I would ask this court to reverse the trial court and for an order finding that the shelter is entitled to enforce the step-down clause that the insured is entitled to the $20,000 in coverage, and also for an order reversing the trial court's finding of attorney's under Section 155. Thank you. Thank you, Counsel. Counsel? Good morning, Your Honors. Good morning. I'm not quite sure where to begin. Mr. Badesky professes he's not challenging the underlying order, but immediately in his opening argument started talking about how the plaintiff was occupying a stolen car at a gunpoint and wasn't a resident of the household. But without getting into the underlying decision, the court found that he was a resident of the household, found that he and two buddies of his had accepted a ride, didn't know the car was stolen, and that there was nothing wrong with it, and hence they should pay under the uninsured owner's provision. And that the exclusion didn't apply because the court found that it was ambiguous in its application and hence violated public policy. Now, that's all historically very interesting, but that isn't supposed to be what we're here for. He never appealed that decision, so obviously the shelter accepted that decision as being legally and factually correct. Eighty-two days went by, and then they filed, well, they refused to pay pursuant to the court's decision to tender their limits. They changed the limits. They refused to pay the balance of it, and hence the plaintiff was forced to file a post-judgment proceeding to get an order ordering them to pay. We're not here trying to challenge an insurance company's ability to have exclusionary clauses. There's a jillion cases that say they can exclude certain factual situations from coverage, but it has to be clear, unambiguous, and not violative of public policy. We're likewise not here to challenge an insurance company's ability to have a step-down clause, but once again, it has to be clear, unambiguous, and not violative of public policy. We're here challenging the defendant's application of its step-down clause to this situation. As I said, what we're specifically here about is the underlying order, which shelter accepted, didn't challenge with an appeal, so they must have accepted it as being okay, but then refused to pay. Now, we're here on the court's order on the post-judgment relief ordering them to pay. The defense likes to argue that somehow the filing of the post-judgment petition extended if they're going to challenge the underlying decision, somehow extended their appellate deadline. Well, this would be very far different from a citation to discover assets, and that certainly doesn't extend any appellate deadlines. So the only thing that we're really here on is the court's subsequent orders, pursuant to the post-judgment petition, ordering them to pay. Initially, the defendant argued, or suggested, that the court's decision was a law, and hence this law finding their exclusionary provision to be ambiguous in its application, and hence violative of public policy, that the court's order was a law within the meaning of their policy. And he just read, I believe, the exclusion, or rather the step-down provision to you, if any appellate uninsured motorist law, uninsured motorist law, or financial responsibility law, renders any provision of this policy to be unenforceable, then the coverage steps down. Well, the only law that's involved in this case at all is the uninsured motorist law, which is over 50 years old, requires the defendant to provide uninsured coverage to his insurance. There's nothing about that law that struck down any particular provision of its policy. The court's ruling did, but the court's ruling isn't a law. That provision, I said that, the purpose of it is to protect an insurance company from the situation in which a legislature passes a law that mandates some coverage that the otherwise doesn't have. So you've got policies out there when this law takes effect that didn't anticipate this new, demanded coverage, didn't anticipate the cost of it, and therefore, okay, if we're obligated to do it, we're going to do it at the minimum, you know, until some time further down the road when they can get a grip on it. Not a court's ruling, as I said in my brief, if they're arguing credit catch 22, you could put all the nasty provisions you wanted in an insurance policy attempting to exclude coverage, charge great big premiums, and if the insurer didn't challenge it, oh, then they didn't have to pay. And if the insurer did challenge it and succeed it and the court ruled on it, then we don't have to pay what we contracted for, we only have to pay the minimum. There's something going on with me driving here today, and that is I don't even know if this order is appealable. Is a post-judgment order directing payment the kind of final and appealable order that should be the subject of an appeal? And to be perfectly honest, I don't know. I didn't come prepared for that. I think what we're hearing along with the court's orders and it's in the file, all the court did was find that it had found the plaintiff's son to be insured and that there was coverage and hence there was no dispute in the post-judgment proceeding as to the amount. The young man was in a coma for four years in a nursing home with medical bills, you know, this high. So the $50,000 policy limit doesn't come remotely close to the expenses incurred. So that aspect of it wasn't really in dispute. The only aspect was his application of the step-down provision based on a law that rendered one of his policy provisions unenforceable. So your basic argument is jurisdiction? I'm sorry? Your basic argument is jurisdiction on the judgment. Now, my question is, what about the $155,000? Is that right? Do you have insurance over his law? No, no, the attorney's fees. Oh, well, the court found that this argument, the trial court felt it was so far-fetched that it has to be bogus and hence awarded $1,200 in attorney's fees. It's up to you to decide how reasonable this argument is. I think he's stretching the outer limits of a possible, just because it's a big argument doesn't mean it's legitimate to dispute. I just, they don't like what happened in the trial court that they didn't appeal. They're saddled with it. So there's stretching reason to try to figure out some way to avoid paying what they're supposed to pay. I don't really have your honors. I wish you had a question. I don't believe we do. Thank you, counsel. Thank you. Counsel? Well, your honors, in terms of this issue of appealability or the court doesn't have jurisdiction, I cited this Bank of Chicago versus Park National Bank and it deals with that same section, that section 2-701 of the Code of Civil Procedure. I thought it was directly on point. What happened here was this. It's a little bit unconventional, a little bit unusual. No, we're not appealing the court's finding that there was U.M. coverage or that Mr. Anderson was a resident of the relative. Mr. Anderson was a resident relative of Mr. Gooch, the insurer. That's not the issue. What we're appealing is the amount of coverage that's owed in the section 155. Just so the court's aware of this, when the trial court entered its order after the trial of the case, there was no finding of the amount of coverage that was available. And the record is at C-242 is the page in the record that references that the order, the trial court's order after the trial. If I could just... Yeah, it says, you know, pursuant to the plaintiff's prayer, the defendant's shelter insurance is ordered to compensate the plaintiff or an East Gooch individual and the estate of Zanis Anderson for the damages which they incurred as a result of the accident of December 28, 2002 involving Zanis Anderson, pursuant to the provision and limitations of its policy of insurance. So, I mean, there was no finding of exactly how much coverage was owed. That came up later. This whole issue of the step-down clause, we didn't even know the step-down clause was even going to be an issue until we got the order from the court basically saying that it's... I'm sorry. We didn't know that there was going to be a violation of the insurance code until we got the order of the court saying that the exclusion, the permissive passenger exclusion was in violation of the insurance code. That triggered this step-down clause which was the other provision of the policy. So this was not even an issue in the case, Your Honors, until after the trial and the trial court issued its order. So this didn't even come up yet. So there's nothing to appeal initially. So the court, after the trial, the court had to adjudicate this other issue and that's what the appeal is from. So, I mean, there was really nothing to appeal after the trial because the issue of how much coverage was available had not even been adjudicated because the step-down clause was triggered. Then there was an argument Mr. Kernan made about well, you know, it's not a law or the court's order is not a law. Well, the only problem with that is we don't know at least I don't know whether a particular provision of an insurance policy is a violation of the insurance code unless and until I get an opinion from the court, from some type of court, either this court or the Supreme Court or some appellate court or a trial court telling us that. I mean, that's what courts do when they say if a verbiage of an insurance policy or my fines against public policy or it unreasonably diminishes what an insurance company is required to do that's when we learn that something in a policy violates the code, violates the law. Now, whether or not Judge Gleason's order was considered a law or not, I don't think that's the point. But the point is a finding that the trial court found that this exclusion in the shelter policy the exclusion for the permissive passenger, that violates the insurance code and that's what was said in the order that's at C241. That's when we learn that it violates the law and therefore that triggers the step down that causes application. And again, I believe there's really not a genuine issue as to appealability because we didn't even have the issue to appeal at the time of the trial court's order after the trial. So, I just thank you for your consideration. Thank you, counsel. We appreciate the briefs and arguments of both counsel and clarifying what is an issue before the court and we will take the case under advisement. Court will be in a short recess.